**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ANGELA D. S.,

Plaintiffs,

v.

MARTIN O'MALLEY,

Defendant.

Case No. 2:23-cv-00888-CDS-NJK

**REPORT AND RECOMMENDATION**

This case involves judicial review of administrative action by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits pursuant to Title XVI of the Social Security Act. Currently before the Court is Plaintiff's motion to reverse and remand. Docket No. 17. The Commissioner filed a response in opposition and a cross-motion to affirm. Docket Nos. 20-21.[1] Plaintiff filed a reply. Docket No. 22.

## I. STANDARDS

### A. Disability Evaluation Process

The standard for determining disability is whether a social security claimant has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(3)(A). That determination is made by following a five-step sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). The first step addresses whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. §§

[1] This cross-motion practice was abolished by the Supplemental Rules for Social Security, which now require the filing of an opening brief, a responsive brief, and a reply brief. *See* Supp. R. for Soc. Sec. 6, 7, 8. Counsel must familiarize themselves with these new rules moving forward.

404.1520(b), 416.920(b).[2] The second step addresses whether the claimant has a medically determinable impairment that is severe or a combination of impairments that significantly limits basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). The third step addresses whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. There is then a determination of the claimant's residual functional capacity, which assesses the claimant's ability to do physical and mental work-related activities. 20 C.F.R. §§ 404.1520(e), 416.920(e). The fourth step addresses whether the claimant has the residual functional capacity to perform past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The fifth step addresses whether the claimant is able to do other work considering the residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g).

B. Judicial Review

After exhausting the administrative process, a claimant may seek judicial review of a decision denying social security benefits. 42 U.S.C. § 405(g). The Court must uphold a decision denying benefits if the proper legal standard was applied and there is substantial evidence in the record as a whole to support the decision. *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). Substantial evidence is "more than a mere scintilla," which equates to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. ____, 139 S.Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id.*

## II. BACKGROUND

A. Procedural History

On November 10, 2020, Plaintiff filed an application for disability insurance benefits with an alleged onset date of January 1, 2010. *See, e.g.*, Administrative Record ("A.R.") 176-83. Plaintiff's application was denied initially. A.R. 85. On November 4, 2021, Plaintiff's claim was

[2] The five-step process is largely the same for Title II and Title XVI claims. For a Title II claim, however, a claimant must also meet insurance requirements. 20 C.F.R. § 404.130.

denied on reconsideration. A.R. 93. On November 17, 2021, Plaintiff filed a request for a hearing before an administrative law judge. A.R. 114-16. On March 9, 2022, Plaintiff, Plaintiff's representative, and a vocational expert appeared for a hearing before ALJ Cynthia Hoover. *See* A.R. 33-49. On March 23, 2022, the ALJ issued a "Request for Vocational Interrogatory." A.R. 321-26. The Vocational Expert ("VE") issued a response the same day. A.R. 327-331. On April 8, 2022, Plaintiff filed a challenge to the VE's finding that the occupation of Document Preparer, Microfilming ("document preparer"), was an occupation that still had jobs in significant quantities in the economy. A.R. 338-341. On May 25, 2022, ALJ Hoover issued an unfavorable decision finding that Plaintiff had not been under a disability through the date of the decision. A.R. 15-27. On June 29, 2022, Plaintiff filed a request for review by the Appeals Council. A.R. 342-345. On April 13, 2023, the Appeals Council denied Plaintiff's request for review. A.R. 1-6. On June 6, 2023, Plaintiff commenced this action for judicial review. Docket No. 1.

B. The Decision Below

ALJ Hoover's decision followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a). A.R. 15-27. At step one, ALJ Hoover found that Plaintiff had not engaged in substantial gainful activity from the application date, November 10, 2020. A.R. 18. At step two, ALJ Hoover found that Plaintiff had the following severe impairments during the pertinent period: spine disorders; heart failure; gout; obesity; essential hypertension with chronic kidney disease; and sleep-related breathing disorder (20 CFR 416.920(c)). A.R. 18. At step three, ALJ Hoover found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. A.R. 18-19. ALJ Hoover found that Plaintiff has the residual functional capacity:

> to perform sedentary work as defined in 20 CFR 416.967(a) except the claimant can never climb ladders, ropes or scaffolds or crawl; the claimant can occasionally climb ramps or stairs, stoop, kneel, or crouch, and must avoid extreme temperatures and vibration. The claimant can have occasional exposure to pulmonary irritants defined as atmospheric conditions in the Selected Characteristics of Occupations, the companion publication to the Dictionary of Occupational Titles. The claimant should avoid hazards such as unprotected heights and dangerous moving machinery like chainsaws and jackhammers.

A.R. 20-24. At step four, ALJ Hoover found Plaintiff had no past relevant work. A.R. 24. At step five, ALJ Hoover found that jobs exist in significant numbers in the national economy that Plaintiff can perform based on her age, education, work experience, and residual functional capacity. A.R. 24-26. In doing so, ALJ Hoover defined Plaintiff as a younger individual aged 18-49 as of the date the application was filed, with a limited education. A.R. 24. ALJ Hoover found the transferability of job skills to be immaterial. A.R. 24. ALJ Hoover considered Medical Vocational Rules, which provide a framework for finding Plaintiff not disabled, along with vocational expert testimony that an individual with the same residual functional capacity and vocational factors could perform work as a document preparer, lens inserter, and bench assembler. A.R. 25. Based on all of these findings, ALJ Hoover found Plaintiff not disabled from the alleged onset date to the date last insured. A.R. 26-27.

**III. ANALYSIS**

Plaintiff argues on appeal that the ALJ erred at step five in finding that Plaintiff could work as a document preparer because that job is now obsolete. Docket No. 17 at 6-11. Plaintiff also argues that this error was harmful because the other jobs identified by the ALJ at step five do not exist in sufficient numbers in the national economy. *Id.* at 9-10. Finally, Plaintiff argues that the ALJ failed to resolve a discrepancy between the number of jobs in the economy as provided by the VE and the job numbers that counsel provided in the response to the VE's report. The Commissioner responds that ALJ reasonably relied on VE's responses to interrogatories to determine that jobs exist in significant numbers in the national economy that Plaintiff can perform. Docket No. 20 at 6-11. The Commissioner has the better arguments.

A. Step Five

At step five, the burden shifts to the Commissioner to determine whether a person with the claimant's limitations, age, education, and experience can perform occupations that "exist in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(1); *Wischmann v. Kijakazi*, 68 F.4th 498, 504 (9th Cir. 2023). A VE provides testimony that aids the ALJ in this determination. *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1192 (9th Cir. 2022). VEs are professionals who, through their training and experience, have "expertise and current knowledge of working

conditions and physical demands of various jobs; knowledge of the existence and numbers of those jobs in the national economy; and involvement in or knowledge of placing adult workers with disabilities into jobs." *Biestek*, 139 S. Ct. at 1152; *Kilpatrick*, 35 F.4th at 1192.

The Social Security Administration ("SSA") contracts with VEs to provide "independen[t] and impartial" testimony about the physical requirements and prevalence of different jobs in the national economy. Soc. Sec. Admin., *Vocational Expert Handbook*, 5 (June 2020); *see also Biestek*, 139 S. Ct. at 1152; *Kilpatrick*, 35 F.4th at 1192. Due to their specialized knowledge, the SSA recognizes VEs as "reliable sources of occupational information in the evaluation of disability claims." SSR 00-4p, 65 Fed. Reg. 75760 (2000); *see also* 20 C.F.R. § 416.966(e) (authorizing VE testimony to assist in step five determinations).

In accordance with Social Security Act regulations, *see* 20 C.F.R. §§ 416.960(b)(2), 416.966(e), an ALJ is entitled to rely on a VE's testimony to support a finding that the claimant can perform occupations that exist in significant numbers in the national economy. *See Ford v. Saul*, 950 F.3d 1141, 1160 (9th Cir. 2019); *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). "Given its inherent reliability, a qualified vocational expert's testimony as to the number of jobs existing in the national economy that a claimant can perform is ordinarily sufficient by itself to support an ALJ's step-five finding." *Ford*, 950 F.3d at 1160. A VE's expert opinion "may count as substantial evidence *even when unaccompanied by supporting data*." *Biestek*, 139 S. Ct. at 1155 (rejecting argument that VE testimony could never qualify as substantial evidence when the VE refused to produce her underlying data) (emphasis added); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required").

Although VE testimony is "inherently reliable," it is "not incontestable." *Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017). In *Buck*, the Ninth Circuit held that the ALJ had an obligation to resolve a dispute over the number of representative jobs the claimant could perform. *Id.* at 1052. That was because "the vast discrepancy between the VE's job numbers and those tendered by Buck, presumably from the same source, is simply too striking to be ignored." *Id.* If Plaintiff's proffered evidence regarding available jobs is significant and probative, the Court must remand to

the ALJ to address the inconsistency on the record. *See White v. Kijazaki*, 44 F.4th 828, 837 (9th Cir. 2022); *Buck*, 869 F.3d at 1052. Otherwise, if the plaintiff's evidence is either not probative or not significant, the Court must uphold the ALJ's determination. *See Kilpatrick*, 35 F.4th at 1195.

1. Purported Obsolescence of Document Preparer Job

Plaintiff argues that the Court must follow *Valdez v. Comm'r*, 2023 WL 2636377 (E.D. Cal. Mar. 24, 2023) by finding the document preparer occupation obsolete.[3] However, the Court is not required to follow *Valdez* and accept, without analysis, Plaintiff's proposition that the document preparer occupation is obsolete. *Valdez*, an unpublished, out-of-district order, is not binding on this court; at best, it is persuasive. *See Hart v. Massanari*, 266 F.3d 1155, 1174 (9th Cir. 2001) (precedent of one district court in a circuit does not bind other district courts).

Further, the Ninth Circuit has instructed that courts must address "on a case-by-case basis" whether evidence submitted by a claimant is meritless and immaterial or significantly probative in order to determine whether the ALJ had a duty to address a conflict in job-number evidence. *Wischmann*, 68 F.4th at 506. This is because the question before the Court is not whether a job is obsolete, but whether the Commissioner has met the burden to establish that jobs exist in significant numbers in the national economy that Plaintiff can perform. *Webb*, 433 F.3d at 686; 20 C.F.R. §§ 404.1520(g), 416.920(g).

In fact, other courts have come to the opposite conclusion of *Valdez*, that document preparation occupations exist in significant numbers in the national economy. *See*, *e.g.*, *Ronquillo v. Saul*, No. 1:19-cv-1665-JLT, 2021 WL 614637, at *7 (E.D. Cal. Feb. 17, 2021) (declining to find document preparer occupation obsolete); *Rivota v. Saul*, No. 1:18cv-01342-BAM, 2020 WL 1306985, at *8 (E.D. Cal. Mar. 19, 2020) (recognizing that courts have not generally determined that document preparer occupations are obsolete); *Wyatt C. v. Comm'r*, 2018 WL 46000289 (D. Or. Sept. 22, 2018) (recognizing that current document preparation jobs merely require scanning

[3] The Court notes that claimant's argument was unopposed in *Valdez*. *Id.* at *2. In the present case, the Commissioner has vigorously defended the ALJ's reliance on the VE's job data. Docket No. 20.

documents, rather than microfilming). Therefore, the Court rejects the argument that document preparer occupations are obsolete.

2. Competing Job Data Evidence

Plaintiff also argues that the ALJ failed to address her objections to the VE's Vocational Interrogatory, A.R. 338-341, where Plaintiff argued that the document preparer position was obsolete and that there were not sufficient jobs in the economy for her to perform. However, Plaintiff is incorrect in asserting that ALJ failed to address this argument. Instead, the ALJ found that the responses of the VE, including the number of document preparer jobs the VE found existed in the national economy, "conform to the rules and regulations" of the SSA. A.R. 25. Particularly, the ALJ found that the VE's reliance on the Dictionary of Occupational Titles ("DOT") as a "baseline for job data" and "vocational testimony" was appropriate. A.R. 25-26.

The ALJ need not consider the competing job data evidence submitted by Plaintiff's counsel unless it is probative. *Wishcmann*, 68 F.4th at 506. The evidence submitted by Plaintiff's counsel consisted of a four-page letter consisting of: (1) a statement that Plaintiff does not object to the VE's responses to the Vocational Interrogatories; (2) the DOT description of "Document Preparer, Microfilming" with one sentence of analysis stating that it defies logic "that there would exist a significant number of occupations in the US economy" dealing with microfilm; and (3) new calculations of job data numbers for document preparer, lens inserter, and bench assembler appearing to use the "equal distribution method."[4] A.R. 338-341.

Competing job data evidence is more likely to be probative if it is acquired by replicating the VE's methodology. *See Buck*, 869 F.3d at 1052; *Kilpatrick*, 35 F.4th at 1194. However, Plaintiff's attorney did not attempt to replicate the VE's methodology. While the VE's response to the interrogatories did not reveal his methodology, other than his professional knowledge and experience, the ALJ informed Plaintiff's counsel that he could submit further written questions for

[4] Strangely, while simultaneously arguing that the document preparer position is obsolete, Plaintiff calculates the same number of jobs in the national economy for document preparer as the VE: 19,000. A.R. 340.

the VE or request a supplemental hearing. A.R. 335. Yet, no request for further written questions or a supplemental hearing was made.

Additionally, competing job data evidence is more likely to be probative if it is calculated with "expertise in calculating job figures in the national economy." *Kilpatrick*, 35 F.4th at 1194; *Tobeler v. Colvin*, 749 F.3d 830, 834 (9th Cir. 2014) (an ALJ need not discuss evidence that a lay witness is "not competent" to provide). Plaintiff's attorney identified no expertise in calculating job data in the national economy but appears to have made calculations based on the DOT and the Bureau of Labor Statistics' Standard Occupational Classification system or "SOC."[5] A.R. 340-41.

Plaintiff's counsel asserts that he took the total number of jobs in each applicable SOC code and divided by the number of DOT occupation titles within that group. A.R. 340-41. For the document preparer occupation, it appears that counsel attempted to adjust the numbers (though he calculated incorrectly) based on Plaintiff's sedentary exertion level. A.R. 341. However, these calculations required the improbable assumption (and produced the improbable result) that jobs within the same SOC all had the exact same number of full-time jobs. This process is sometimes labeled the "equal distribution method." *Wischmann*, 68 F.4th at 505 (citing *Kilpatrick*, 35 F.4th at 1194). Like the Ninth Circuit, the Seventh Circuit has criticized the "equal distribution method" as "operat[ing] on the illogical assumption that all job titles within a particular DOT job group exist in equal numbers in the national economy." *Chavez*, 895 F.3d at 966. Plaintiff identifies no support for this approach. Under these facts, Plaintiff's submission was not significant probative

---

[5] The 2018 SOC is a federal statistical standard maintained by the Bureau of Labor Statistics ("BLS") to classify workers into occupational categories for the purpose of calculating or disseminating job data. U.S. Bureau of Labor Statistics, *Standard Occupational Classification* website, https://www.bls.gov/soc/ (last visited July 17, 2024). The criteria for SOC occupation codes are different than the DOT occupation codes. *Wischmann*, 68 F.4th at 502. "The SOC system groups together detailed occupations with similar job duties" in a single code, such that "a single SOC group may contain multiple DOT occupations." *Goode v. Comm'r*, 966 F.3d 1277, 1281 (11th Cir. 2020). For example, ten DOT codes could be correlated to a single SOC code, which reports 100,000 total jobs. *See Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 447 n.4 (2nd Cir. 2012). But that "gives no information at all about how many positions *each* of the ten DOT codes contributed to that total." *Id.*

evidence, and the ALJ had no duty to address it, because it neither replicated the VE's methodology nor was calculated with expertise in adducing job data in the national economy.

Despite these deficits in the evidence, the ALJ did address the issue of whether the VE had identified significant numbers of jobs in the national economy that Plaintiff could perform. A.R. 25-26. The ALJ concluded that Plaintiff's submission of competing job numbers was flawed by the use of the equal distribution method. A.R. 26. The ALJ found that the VE stated that there was no conflict between the VE's interrogatory responses and the DOT. A.R. 26. The ALJ concluded, based on the testimony of the VE, that Plaintiff could make a "successful adjustment to other work that exists in significant numbers in the national economy." A.R. 26.

Absent expert testimony or other evidence supporting Plaintiff's theory, the Court is left with Plaintiff's speculative data and speculation is insufficient. *See Bayliss*, 427 F.3d at 1218 ("An ALJ may take administrative notice of any reliable job information, including information provided by a VE. A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required"); *Wright v. Berryhill*, 692 F. App'x 496, 497 (9th Cir. 2017) (unpublished) ("Absent a persuasive challenge to the ALJ's reliance on the VE's proffered job numbers, [claimant] cannot establish that the ALJ's acceptance of the VE's testimony constituted reversible error"). Courts routinely reject lay interpretation of job data such as Plaintiff offers here. *See Frayer v. Berryhill*, No. 2:17-cv-2347-EFB,2019 WL 1206747, at *5 (E.D. Cal. Mar. 14, 2019) (collecting cases); *see also Harper v. Berryhill*, No. 17-CV-04296-DMR, 2018 WL 6592446, at *5 (N.D. Cal. Dec. 14, 2018) ("Without more, [plaintiff's] argument is speculation. At most, he offers an alternative opinion regarding the job numbers, but [plaintiff] is not a vocational expert and is not qualified to assess BLS statistics or other job statistics, and he provides no expert opinion interpreting the data he offers").

Thus, the 44,000 jobs that the VE identified that Plaintiff could perform with her RFC were supported by substantial evidence. "[I]t is well-settled in the Ninth Circuit that 25,000 national jobs constitute a significant number within the national economy." *Garza v. Comm'r of Soc. Sec.*, 2023 WL 6930724, at *2 (E.D. Cal. Oct. 18, 2023) (citing *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014)). Even if the ALJ erred by considering the document preparer jobs

that error is harmless because the other jobs identified by the VE, lens inserter and bench assembler, totaled 23,500. A.R. 25. Courts have routinely found job figures below 25,000 to also constitute a significant number within the national economy. *See Maye v. Kijakazi*, 2023 WL 4364890, at *7 (S.D. Cal. July 6, 2023) (collecting cases); *Woodworth v. Kijakazi*, 2022 WL 17542420, at *7 (E.D. Cal. Dec. 8, 2022) (collecting cases). An error is harmless when a reviewing court can "confidently conclude" that an error was "inconsequential to the ultimate nondisability determination." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). Here, the Court is confident that even if the document preparer jobs were excluded, the ALJ would find that the combined 23,500 jobs were a significant number of jobs in the economy. Therefore, the Court finds that substantial evidence supports the ALJ's determination that Plaintiff was not disabled.

## IV. CONCLUSION

Based on the forgoing, the undersigned **RECOMMENDS** that that Plaintiff's motion to reverse and remand (Docket No. 17) be **DENIED** and the Commissioner's cross-motion to affirm (Docket No. 20) be **GRANTED**.

Dated: July 18, 2024

Nancy J. Koppe
United States Magistrate Judge

## NOTICE

This report and recommendation is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation must file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).